**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN  DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **CHASE MORRISETTE, DEANN MILLY,** ) | |
| **and LACY IGNACIO MCFADDEN,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **CIVIL ACTION NO.:** |
| ) | **1:22-cv-00507** |
| **CITY OF ORANGE BEACH, ALABAMA,** ) | |
| **TONY KENNON, in his individual and official** ) | |
| **capacity as the Mayor of Orange Beach, Alabama,** ) | |
| **ANNETTE MITCHELL, in her individual and** ) | |
| **official capacity as council member of  City of** ) | |
| **Orange Beach, Alabama, JONATHAN** ) | |
| **LANGSTON, in his individual and official** ) | |
| **capacity as the Recreation Director for City of** ) | |
| **Orange Beach, Alabama, and JEFF BOYD, JERRY** ) | |
| **JOHNSON, JEFF SILVERS and JONI BLALOCK,** ) | |
| **in their official capacities only as council members** ) | |
| **of  City of Orange Beach, Alabama** ) | |
| ) | |
| **Defendants.** ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I.**      **INTRODUCTION**

1.      This is an action  for  legal and equitable  relief  to redress sex discrimination against

Chase Morrisette, a gay male, and the discrimination of Lacy Ignacio McFadden and DeAnn Milly

because of their association and support of Morrisette, a gay male. Claims are also asserted against

Defendants for retaliation against Morrisette, Ignacio and Milly for their reports and opposition to the

hostile work environment and discrimination against Morrisette. The  suit is brought  to  secure  the

protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of

1

1964, 42 U.S.C. §§ 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1983 pursuant to the First and Fourteenth Amendments. Plaintiffs further state as follows:

## II.    JURISDICTION AND VENUE

2.    Jurisdiction of this Court is invoked pursuant to 42 U.S.C. §2000e, et seq., 42 U.S.C. §1983, and 28 U.S.C. §§ 1331, 1343, 2201, and 2202.

3.    Jurisdiction to grant injunctive and declaratory equitable relief as well as damages is invoked pursuant to 42 U.S.C. §2000e-5(f) and (g), 42 U.S.C. §1983.

## III.    VENUE

4.    Defendant, City of Orange Beach, Alabama ("OBA"), is a governmental entity located and doing business in this district. At all times relevant to this action. The Defendant OBA was an employer within the meaning of Title VII of the Civil Rights Act of 1964.

5.    Venue is proper in the Southern District of Alabama, Southern Division, since Defendant is conducting business within this District and Division and this action is brought where the unlawful employment practice was committed.

## IV.    PARTIES

6.    The Plaintiff, Chase Morrisette ("Morrisette"), is over the age of nineteen years and a resident citizen of Baldwin County, Alabama. Morrisette was employed by OBA, at all times relevant to this action.

7.    The Plaintiff, DeAnn Milly ("Milly"), is over the age of nineteen years and a resident citizen of Lauderdale County, Alabama. Milly was employed by OBA at all times relevant to this action.

2

8.      The Plaintiff, Lacy Ignacio McFadden ("McFadden"), is over the age of nineteen years and a resident citizen of Grant County, Washington.   McFadden was employed by OBA at all times relevant to this action.

9.      The Defendant, City of Orange Beach, Alabama ("OBA"), is a governmental entity operating and existing under the laws of the State of Alabama. Defendant OBA employs at least fifteen (15) persons and is an "employer" under Title VII.

10.      The Defendant, Tony Kennon ("Kennon"), is over the age of nineteen years and a resident citizen of the City of Orange Beach, Alabama. Kennon is sued in his individual and official capacity as the Mayor of OBA.

11.      The Defendant, Annette Mitchell ("Mitchell"), is over the age of nineteen years and a resident citizen of the City of Orange Beach, Alabama. Mitchell is sued in her individual and official capacity as a council member of OBA.

12.      The Defendant Jonathan Langston("Langston"), is over the age of nineteen years and a resident citizen of the City of Orange Beach, Alabama. Langston is sued in his individual and official capacity as the Recreation Director for OBA.

13.      The Defendants, Jeff Boyd, Jerry Johnson, Jeff Silvers, and Joni Blalock (collectively "City Council") are sued in only their official capacities as city council members of the City of Orange Beach, Alabama.

## V.      EXHAUSTION OF ADMINISTRATIVE REMEDIES

14.      Plaintiffs filed timely Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about June 14, 2021.

15.     On September 29, 2022,  the EEOC issued Milly a right to sue which was received by the Plaintiff Milly.

16.     On October 19, 2022, and October 28, 2022, the Department of Justice issued a right to sue letter which was received respectively by Plaintiffs Morrisette and McFadden.

17.     Plaintiffs have satisfied all conditions precedent prior to bringing an action under Title VII of the Civil Rights Act of 1964, as amended.

### VI.     FACTUAL ALLEGATIONS

### A.     GENERAL ALLEGATIONS

18.     At all times relevant to this action, Defendant Langston was the Recreational Director and a member and department head supervisor over the Orange Beach Expect Excellence Theater Program ("EE  Program").  Langston was, also, a member and participant in the EE Program Steering Committee ("Steering Committee").

19.     At all times relevant to this action, Defendant Kennon was the Mayor of OBA. Kennon was charged with the responsibility of managing and supervising the employees of OBA.

20.     At all times relevant to this action, Defendant Mitchell was a city council member of OBA and member and participant in the EE Program and Steering Committee.

21.     Defendants OBA and   Kennon failed to provide adequate and proper supervision of Langston in the performance of his duties.

22.     OBA  received  complaints from  other  employees working at OBA, alleging Langston

had engaged in inappropriate, offensive, and hostile conduct towards other OBA employees.

23.     OBA had notice and knowledge of the hostile and discriminatory conduct and propensities of Langston and failed to take corrective action to stop the offensive and hostile conduct.

24.     OBA had ineffective and inadequate policies and procedures for informing and training its employees and managerial employees in a manner as to avoid the type of conduct alleged herein.

25.     OBA, City Council, Mitchell, and Kennon failed to properly and adequately monitor and enforce OBA's EEO policies and discrimination laws.

26.     Defendants OBA, City Council, Mitchell and Kennon's failure to properly monitor and enforce EEO policies and laws related to discrimination created obvious risks that violations of federally protected rights were likely to occur and amounted to deliberate indifference to the Plaintiffs' federally protected rights.

### B.     FACTS RELATED TO CHASE MORRISETTE

27.     October 24, 2018, Morrisette was hired by OBA as a part-time employee. He was promoted to a full-time position in November, 2019, and classified as the Director of Theater for the Orange Beach Expect Excellence Theater Program (EE Program). Morrisette was, also, appointed to serve as a member of the EE Program Steering Committee (Steering Committee) and directed to teach classes in the Continuing Excellence Program offered by OBA.

28.     At all times relevant to this Complaint, Morrisette was qualified to perform his assigned duties.

29.     At all time relevant to this Complaint, Plaintiff satisfactorily performed his duties.

30.    Immediately after Morrisette was hired, Langston, Recreational Director and Morrisette's direct supervisor, began to criticize and harass Morrisette because of his gender, male, sexual orientation, and failure to conform to male norms and stereotypes.

31.    Langston engaged in inappropriate and offensive conduct toward Morrisette and/or in his presence including, but not limited to, inappropriate sexual comments and jokes, sharing intimate details of his sexual encounters and penis size, and intimate and sexual information regarding Langston's wife, Mrs. Jessica Langston ("Mrs. Langston"), Creative Director and Morrisette's supervisor.

32.    Upon information and belief, Langston and Mrs. Langston, Morrisette's direct supervisors, made disparaging comments about Morrisette's sexual orientation and identity to other employees and members of the public and frequently made snide comments about Morrisette's sexuality to and in the presence of other employees, parents, and EE Program members, including, but not limited to, Milly and McFadden.

33.    Langston frequently inquired about Morrisette's sexual encounters and questioned Morrisette about his opinions of the sexuality of other OBA employees and public citizens and/or whether they had homosexual tendencies.

34.    Langston frequently referred to homosexuals as 'the gays" or laughed about gay stereotypes calling them "faggoty" or "homos".

35.    Langston's inappropriate and discriminatory conduct was open and obvious and was commonly known and systemically tolerated by employees and supervisors of OBA, including, but not limited to, Kennon and Mitchell.

36.    OBA and its decision makers, including Mitchell and Kennon, knew or should have

known of the conduct of Langston described herein but failed to take the information seriously and/or provide Morrisette with an effective remedy to the conduct.

37.     Langston's offensive and derogatory comments and conduct was directed at Morrisette because of Morrisette's gender, male, sexual orientation, and due to Langston's perceptions that Morrisette failed to conform to typical male norms and stereotypes.

38.     Jessica Langston ("Mrs. Langston"), Creative Director and Morrisette's supervisor, engaged in inappropriate comments toward Morrisette including, but not limited to, comments that Darren Butler (Butler), who worked with the EE Program as a liaison for the Baldwin County Board of Education, had a "crush" on Morrisette.

39.     In August, 2020, the Steering Committee met to discuss upcoming productions. "Clue", proposed by Mrs. Langston, was discussed and widely accepted by the Steering Committee members until Mrs. Langston, Creative Director, and Mitchell, city council member, rejected the play due to morality concerns due to the presence of a homosexual character  cast in the production. The issue was addressed again a few weeks later when Mrs. Langston, Creative Director, suggested replacing the homosexual character with a "psychopath" and/or someone "criminally insane" to address her morality concerns. Councilwoman Mitchell was, also, vocal about "Clue's" "gay" character,  noting  the homosexual character "needed to go."

40.     The comments of Mrs. Langston and Mitchell were offensive to Morrisette and others in the Steering Committee including, but not limited to, McFadden, who called the comments "discriminatory" and left the meeting in protest.

41.     "Clue" was rejected by Mrs. Langston, Creative Director, and Mitchell, City Council member, because a "gay" character was unable to be re-characterized and/or modified.

7

42.    In October, 2020, the Steering Committee identified "Hair Spray" as a possible production for the EE Program. Langston, Creative Director, and Mitchell, a Steering Committee and City Council member, openly expressed concerns regarding interracial concepts in the play as well as concerns that a female character was historically cast with a male.

43.    Langston and Mitchell rejected "Hair Spray" because it had LGBTQ connotations and was not "family friendly."

44.    Mrs. Langston voiced to the EE Steering Committee members, including Mitchell, parents, students, and adult Program members, that Morrisette's desire to produce "Hair Spray" was motivated by a "gay political agenda."  Morrisette was not the only Steering Committee member supporting the production of "Hair Spray" as it was widely desired by the students, parents, and the EE Program's adult community members.

45.    Morrisette was singled out by Mrs. Langston and accused of having a "gay political agenda" because Morrisette was an openly gay male and did not conform to male norms and stereotypes.

46.    In October, 2020, Mrs. Langston and Langston made derogatory comments about Darren Butler (Butler), an employee of the Baldwin County Board of Education who worked with the EE Program. Langston and Mrs. Langston opined Butler was "gay" and asserted Butler "had a crush" on Morrisette. The statements and comments of Langston and Mrs. Langston made Morrisette and other employees uncomfortable.

47.    Morrisette was constantly targeted, criticized and condemned by his supervisors, Langston, Recreational Director, and Mrs. Langston, Creative Director, because of his sexual orientation and perceived lack of masculinity.

8

48.     The inappropriate and discriminatory conduct of Langston and Mrs. Langston was frequent and pervasive creating an offensive and hostile work environment.

49.     The conduct alleged herein created an intolerable working condition and environment in which Morrisette was required to work.

50.     OBA was on notice and received numerous complaints related to the discriminatory actions and conduct of Langston and Mrs. Langston including, but not limited to, complaints from Rebecka Mathes ("Mathes"), McFadden, Milly, and Laura Davis ("Davis").

51.     OBA failed and/or refused to address Plaintiffs' complaints and/or to take corrective action to stop the harassment and/or discrimination despite notice of the same.

52.     The hostile and discriminatory acts of Langston and Ms. Langston were ratified by OBA, City Council, Kennon and Mitchell.

53.     Upon information and belief, Mitchell, city council member, advocated and stated she did not want a "gay" to be "the face of the theater."

54.     Upon information and belief, other homosexual employees have been similarly treated by Defendants, and Defendants have engaged in a pattern and practice of discriminating against homosexuals in violation of federal law.

55.     December 29, 2020, Milly filed verbal complaints of discrimination on behalf of Morrisette to Defendant Mitchell. Mitchell noted she would "formally" report the discrimination complaints after the production of "Beauty and the Beast."

56.     In January, 2021, the EE Program produced "Beauty and the Beast" which was a huge success. The production received the acclaim and accolades of Mayor Kennon, the City Council and the community at large.

9

57.     In early January, 2021, Morrisette contacted Mayor Kennon's assistant, Ms. Bryant, to schedule a meeting with Mayor Kennon and Milly. Ms. Bryant was informed of the reasons for Morrisette's meeting request and his intent to file a formal complaint of discrimination. Upon information and belief, Mayor Kennon was informed and aware of Morrisette's complaints of discrimination and Morrisette's intention to file a formal complaint of discrimination.

58.     Mayor Kennon failed and/or refused to schedule a meeting with Morrisette and/or Milly and/or to address his concerns. Kennon had notice and knowledge of the discriminatory treatment of Morrisette and others and had received notice of prior complaints regarding the discriminatory conduct.

59.     Morrisette engaged in protected activity when he made contact with the Mayor's office and informed Ms. Bryant of his complaint and intent to file a formal complaint of discrimination.

60.     January 15, 2021, during the cast party of "Beauty and the Beast," Mayor Kennon openly acknowledged his notice and knowledge of Morrisette's meeting request in the presence of Langston, Mrs. Langston, and Milly. Langston became visibly angry, red-faced and threatened Morrisette stating, "Going behind my back or above my head never ends well." Langston abruptly left the party.

61.     January 18, 2021, Milly and Morrisette were summoned by Langston and Mrs. Langston to a meeting. Langston informed Morrisette and Milly he was aware Milly and Morrisette "were the ones" who "made the show the success that it was." Langston informed Milly and Morrisette he intended all future decisions regarding the EE Program to be made by Milly, Morrisette, Langston and Mrs. Langston.

62.     In January, 2021, discussions regarding producing "Hair Spray" were once again

addressed by the Steering Committee. Mrs. Langston, again, openly and publically accused Morrisette of having a "gay political agenda". The next day, Mrs. Langston advised the Steering Committee members that the EE Program was a "community theater" and would not produce a play because of a "political agenda." Thereafter, Mrs. Langston directed the Steering Committee members to select a "family friendly" and/or a Disney production.

63.     February 15, 2021, Milly, McFadden, Renea McCoy ("McCoy") and Morrisette were called to a meeting with Mrs. Langston and Langston. Langston informed the group there was a "cancer in the room" that needed to be "cut out." Langston went further, voicing that "Everything that happens is God's plan" - 'it's in God's hands,'" and that "whatever happened wasn't wrong" "because it is God's plan." Langston advised the group therewere several ways to handle the "cancer" including shutting down the whole program. Mrs. Langston and Langston then left the room and meeting, but left a recorder in the room which secretly recorded the conversations between the remaining meeting members present. The recording was later published on Facebook.

64.     After the departure of Langston and Mrs. Langston, Milly, McFadden, McCoy, Nancy Dickhute ("Dickhute"), and Morrisette discussed Langston's threats and conduct. Milly, McFadden, Dickhute and McCoy all openly vowed their support of Morrisette regardless of the outcome.

65.     Hours after the recorded meeting, Langston and Vicki Pishna ("Pishna"), Human Resource Director, terminated Morrisette, stating the EE Program was being "dissolved" and "disbanded."

66.     Morrisette's gender, male, his failure to conform to typical male norms and stereotypes, his sexual orientation, and his opposition and complaints were "motivating factors" in Defendants' decision to terminate his employment.

67.     Immediately after Morrisette's termination, Morrisette reported to Pishna, Human Resource Director, complaints of a hostile working environment and concerns that his termination, as well as the terminations of Milly, McFadden, Dickhute, and McCoy, were discriminatory and retaliatory.  Morrisette asked Pishna to schedule a meeting with Mayor Kennon, Morrisette, and Milly to address Morrisette's concerns of discrimination and retaliation.

68.     Neither Milly nor Morrisette were contacted by Pishna, Mayor Kennon and/or any other OBA employee regarding Morrisette's formal complaint to Pishna.

69.     Langston and Mrs. Langston harassed and discriminated against Morrisette as a direct result of his gender, male, sexual orientation, and his failure to conform to male norms and stereotypes.

70.     OBA, Kennon and Mitchell had notice and knowledge of Langston's inappropriate and discriminatory conduct towards Morrisette and others and failed and/or refused to stop the harassment and/or take action to stop discrimination in the workplace.

71.     Within hours after Morrisette, Milly, McFadden, Dickhute, and McCoy were terminated, Defendants blasted email notices to the cast of the upcoming "Footloose" production, notifying them that rehearsals were being postponed due to OBA's delay in obtaining copyright licenses to use the play. The reasons given by OBA for the noticed delay were not true.

72.     Immediately after notice of Plaintiffs' terminations was issued to the public, Mrs. Langston, Langston, Mayor Kennon, and Mitchell, City Council member, advised and assured students, parents and the community at large that the EE Program would not be dissolved and/or disbanded. Mrs. Langston, Langston, Kennon and Mitchell further represented to the public, EE Program and cast members, and employees that the EE Program would continue to produce theater

productions in the immediate future.

73.    Mrs. Langston, Langston, Kennon, and Mitchell, City Council member, published to students, parents and the community at large that Plaintiffs' terminations were necessary for the "safety of the children."

74.    Mrs. Langston published and advised parents that Plaintiffs' terminations were made because of the "kind of people that are around your children."

75.    Mayor Kennon told EE Program parents that Plaintiffs' terminations were needed to "cut out the cancer" and "to protect the children" and promote a "family friendly brand" with "conservative ideals" at OBA.

76.    Mayor Kennon, Mitchell, Langston and Mrs. Langston publicly gave false and pretextual reasons for Plaintiffs' terminations which were calculated and intended to damage Plaintiffs' good names and reputations and to humiliate them.

77.    The false and derogatory comments and actions by Defendants OBA, Kennon, Mitchell, Langston, and Mrs. Langston created significant risk to Plaintiffs including, but not limited to, risk of harm to their reputations and concomitant harm to future employment prospects.

78.    Plaintiffs suffered adverse actions due to Defendants' retaliatory actions, through its agents and employees, including Mayor Kennon, Mitchell, Langston and Mrs. Langston which caused Plaintiffs' harm.

79.    Defendant OBA and its decisionmakers and administrators knew and/or should have known that their statements were false and their described actions discriminatory.

80.    Defendant OBA undertook its unlawful conduct recklessly and with total disregard of Plaintiffs' federally protected rights.

13

81.     Mayor Kennon, Mitchell, Langston and Mrs. Langston acted intentionally and maliciously.

82.     Morrisette's termination was substantially motivated by his gender, male, his failure to conform to the perceived male norms and stereotypes, his sexual orientation, and his efforts to file formal complaints of discrimination with Mayor Kennon.

83.     Defendants discriminated against Morrisette in the terms and conditions of his employment when it terminated Morrisette's employment with OBA and harassed him because of his gender, male, and failure to conform to perceived male norms and stereotypes in violation of federal law.

84.     Defendants failed to make good faith efforts to comply with the law, and reasonable officials knew or should have known that their actions were unlawful.

85.     As the direct and proximate result of the wrongful actions of Defendants, Morrisette was caused to suffer mental anguish, loss of dignity, embarrassment, humiliation, and other tangible and intangible injuries and indignities.

86.     Morrisette was caused to suffer loss of income and other benefits as a direct and proximate result of Defendants' discrimination and retaliation against him.

87.     Morrisette was forced to obtain legal services of the undersigned attorney to enforce his rights under federal law and is required to pay reasonable attorneys' fees, costs and expenses for the services rendered in this cause.

**C.     FACTS RELATED TO DEANN MILLY**

88.     In February, 2020, Milly began working with OBA as a volunteer in the EE Program. August, 2020, Mlly was hired by OBA as a part-time employee and classified as the Costume

Mistress. Milly was also appointed to serve as a member of the Steering Committee and directed to teach classes offered by OBA in its Continuing Excellence Adult Program. Milly remained in said positions until her termination on February 16, 2021.

89.   At all times relevant to this charge Milly was qualified to hold her position and satisfactorily performed her duties.

90.   Milly worked closely with Morrisette, Director of Theater, and developed a personal and professional relationship with Morrisette.

91.   Milly observed Langston, Recreation Director, harass Morrisette using derogatory and homophobic language including, but not limited to, "gay", "faggot", "queer", and "homo." The conduct of Langston was offensive and created an environment that was hostile and discriminatory.

92.   Mrs. Langston, Milly and Morrisette's supervisor, made numerous inappropriate and disparaging comments to Milly and in Milly's presence including, but not limited to, comments that Butler, who worked with the EE Program as a liaison for Baldwin County Board of Education, had a "crush" on Morrisette. Mrs. Langston also frequently vocalized her religious beliefs and her opinion that homosexuals were not "family friendly."

93.   In August, 2020, Milly participated in a Steering Committee Meeting to discuss play selections for the EE program. "Clue" was discussed as a possible production of the EE Program by the Committee, but Mrs. Langston rejected the play because it had a homosexual character in the cast. "Clue" was reconsidered by the Steering Committee a few weeks later when Mrs. Langston expressed her desire to replace the homosexual character with a "psychopath" and/or a "criminal". Mitchell also noted the gay character "had to go." McFadden addressed concerns of "discrimination" and left the meeting in protest.

15

94.     "Clue" was rejected by Defendants because a "gay" character could not be re-characterized and/or modified.

95.     In October, 2020, Mrs. Langston and Langston made derogatory comments about Darren Butler (Butler), who worked with the EE Program as a liaison for the Baldwin County Board of Education, opining their belief Butler was "gay." Milly heard Mrs. Langston and Langston make derogatory references about Butler including , but not limited to, that Butler "had a crush" on Morrisette.

96.     Milly reasonably believed the frequent derogatory and homophobic comments by Langston and Mrs. Langston regarding Morrisette and Butler were inappropriate and offensive.

97.     In October, 2020, the Steering Committee suggested "Hair Spray" as a possible production for the EE Program. Langston and Mitchell expressed concerns regarding interracial aspects of the play and concerns that a female character in the play was traditionally played by a male. The play was, thereafter, rejected because of racial and LGBTQ associations.

98.     In December, 2020, the Steering Committee met and "Hair Spray" was, again, entertained as a potential EE Program production. The production was, again, rejected because Councilwoman Mitchell, a member of the Steering Committee, and Mrs. Langston, determined the play was not "family friendly" due to LGBTQ connotations.

99.     Mrs. Langston, Creative Director, singled out Morrisette, an openly gay male, of "pushing ["Hair Spray"]" to further his "gay political agenda." Morrisette was only one of several people on the Steering Committee advocating for "Hair Spray" and it was desired by parents, students, and members of the EE Program.

100.    Morrisette, who was openly gay, was openly called out and ostracized by Mrs.

Langston for his support of "Hair Spray" due to his gender, male, sexual orientation, and because he did not conform to Mrs. Langston's perceptions of male norms and stereotypes.

101.    The derogatory and discriminatory language of Langston and Mrs. Langston which were directed toward Morrisette were frequent and Morrisette was often criticized for his perceived lack of masculinity because of his sexual orientation.

102.    Langston and Mrs. Langston frequently condemned Morrisette's sexual orientation including, but not limited to, advocating that a gay character in a play was "immoral." The discriminatory and offensive conduct of Langston and Mrs. Langston became more frequent and pervasive creating a hostile and offensive work environment.

103.    Morrisette approached Milly on numerous occasions visibly upset about the discriminatory treatment and hostile environment created by Langston and Mrs. Langston.

104.    Members of the EE Program and Steering committee including, but not limited to, Milly and McFadden, openly objected to the discriminatory, hostile, offensive, and adverse treatment of Morrisette by Mrs. Langston and Langston.  Their objections were not addressed in any manner and the discriminatory and hostile conduct by Langston and Mrs. Langston continued unabated.

105.    Mitchell, who was a participant of the EE Program and Steering Committee, was aware of the hostile aand discriminatory conduct and treatment directed at Morrisette and of Langston's crude and offensive manner toward Morrisette and others.

106.    In December, 2020, Mathes, a female Recreation Staff Member, complained to Human Resources about Langston's inappropriate and discriminatory conduct.  Mathes alleged that Langston referred to her as a "hoe" and told her to get the "sand out of her cooch" during a staff meeting. Mathes was transferred to another Department.

107.    Milly observed Mathes in tears on several occasions during work and, upon information and belief, believes  the discriminatory and hostile environment created by Langston to be the cause of Mathes' distress.

108.    December 29, 2020, Milly met with Mitchell, City Council Member, and complained about the discriminatory and hostile conduct of Langston and Mrs. Langston, including the discriminatory treatment of Morrisette.

109.    Milly engaged in protected activity when she  reported the hostile and discriminatory work environment to Mitchell.

110.    Mitchell informed Milly she could not "remain silent" about her receipt of discrimination complaint noting she would "formally" report Milly's complaint after the production of "Beauty and the Beast."

111.    Upon information and belief, Mitchell, city council member, advocated and represented  she did not want a "gay" to be "the face of the theater."

112.    OBA and its employees and representatives failed and/or refused to investigate Milly's complaints related to Langston and Mrs. Langston and/or to investigate and/or take corrective action to prevent discrimination in the workplace.

113.    Defendant OBA and its administrators and managers failed to take Plaintiffs' complaints seriously and/or to provide Plaintiffs an effective remedy to the conduct.

114.    In January, 2021, the EE Program held the production of "Beauty and the Beast." The production was a huge success receiving the acclaim and accolades of Mayor Kennon, the City Council and the community at large.

115.    In early January, 2021, Morrisette contacted Mayor Kennon's assistant, Ms. Bryant,

to schedule a meeting with Mayor Kennon, Milly and Morrisette. Ms. Bryant was advised by Morrisette of the reason for Morrisette's meeting request. Upon information and belief, Mayor Kennon was informed and aware of Morrisette's complaints of discrimination and Morrisette's intention to file a formal complaint of discrimination.

116.    January 15, 2021, during the cast party of "Beauty and the Beast", Mayor Kennon approached Milly, Langston, Mrs. Langston and Morrisette, repeatedly praising their performance success. Mayor Kennon advised Milly she could have "whatever you want" for the next production to insure that "quality" and production was "as big or bigger" than 'Beauty and the Beast'".

117.    Mayor Kennon openly acknowledged to Milly and Morrisette notice and knowledge of Morrisette's request for a meeting with Kennon. Langston, who was also present, became visibly angry and red-faced upon learning of Morrisette's request to meet with the Mayor.

118.    Langston threatened Morrisette about his request to met with Kennon stating, "Going behind my back or above my head never ends well." Langston abruptly left the party.

119.    In January, 2021, discussions regarding producing "Hair Spray" were once again addressed by the Steering Committee. Mrs. Langston, again, accused Morrisette of having a "political agenda" and "pushing the gay agenda." Mrs. Langston, again, addressed concerns about the play's transvestite character. The next day, Mrs. Langston informed the committee members that the EE Program was a "community theater" and would not entertain a "political agenda."

120.    January 18, 2021, Morrisette and Milly were summoned by Langston and Mrs. Langston to a meeting. Langston informed Morrisette and Milly they "were the ones" who "made the show the success that it was." Langston then told Milly and Morrisette he intended all future decisions regarding the EE Program to be made by the four of them.

19

121.    In January, 2021, Langston made an inappropriate comment about an EE Program employee, Chris Jenkins' audition,   calling his audition "faggoty". These comments were later repeated by Mrs. Langston.  Milly found the comments to be offensive and hostile.

122.    On February 15, 2021, Morrisette, McFadden, McCoy and Milly were called to a meeting with Mrs. Langston and Langston. Langston stated there was a "cancer in the room" and it needed to be "cut  out."  Mrs. Langston then advised everyone that "Everything that happens is God's plan - 'it's in God's hands.'" She exclaimed  that what was going to happen wasn't wrong "because it is God's plan."  She then commented there were several ways to  handle it,  including shutting down the  whole  program.  Mrs.  Langston  and  Langston  left  the  meeting,  but  secretly  recorded  the conversation between the group that remained. The recording was later published on Facebook.

123.    Morrisette,  McFadden,  McCoy,  Dickhute  and  Milly  remained  in  the  meeting.  They began  to  discuss  Langston's  threats  and  Milly,  McFadden,  Dickhute  and  McCoy  all  vowed  their intention to have Morrisette's "back" and support him regardless of the outcome.

124.    Several  hours  after  leaving  the  meeting,  Milly  received  a  text  from  Morrisette informing  her  of  his  termination.  Shortly  after  receiving  this  message,  Milly  received  a  call  from Langston and Pishna, Human Resource Director, informing her that her services with OBA were "no longer  required,"  including  teaching  positions  with  Continued  Excellence  Adult  Program,  because the  program  was  being  "dismantled."     Milly  was  later  informed  that  McFadden,  Dickhute,  and McCoy were also fired for the same reasons.

125.    Three (3) hours after Milly, Morrisette, McFadden, Dickhute, and McCoy were fired, the EE Program sent out notice to cast members of the upcoming "Footloose" production that rehearsals were being postponed a week because permissive rights to  use  the  play  had  not  been

20

granted. The representations by OBA were false as license permissions had been granted prior to Plaintiffs' terminations.

126.    Within hours of Plaintiffs' terminations, parents and students of the EE Program were assured of the program's continued operation and plans for productions in the immediate future.

127.    After Morrisette's termination, Morrisette complained to Pishna, Human Resource Director, of the hostile working environment and concerns that his termination, as well as the termination of Milly, McFadden, Dickhute, and McCoy, was discriminatory and retaliatory. Morrisette requested that Pishna schedule a meeting with Mayor Kennon, Morrisette, and Milly to address Morrisette's concerns of discrimination and retaliation.

128.    Upon information and belief, OBA and its employees and officers failed and/or refused to investigate and/or take any corrective action related to Morrisette and/or Milly's formal complaints of discrimination.

129.    Defendant and its administrators and managers failed to take Plaintiffs' complaints seriously and/or to provide Plaintiffs an effective remedy to the conduct.

130.    The hostile and abusive actions directed toward Milly by OBA and its employees and representatives resulted in a discriminatory and hostile work environment in violation of Title VII.

131.    After the terminations of Milly, Morrisette, McFadden, McCoy and Dickhute had been posted, Mrs. Langston, Langston, and Mayor Kennon advised students, parents and the community at large that the EE Program was not being dissolved and/or disbanded and was expected to continue its theater productions in the immediate future. Within a week of the terminations, all positions held by Milly, Morrisette, and Dickhute had been filled.

132.    Milly's sewing and design classes were filled by Ivan Correa, the Adult line dance

21

teacher, who had no design or sewing experience and/or skills.

133.   Mrs. Langston advised parents that Plaintiffs were terminated because of the "kind of people that are around your children."   Mrs. Langston, Langston, Mayor Kennon, and Mitchell, City Council member, also advised students, parents and the community at large that the terminations were necessary for the "safety of the children."

134.   Mayor Kennon published to parents and the community at large that the Milly, Morrisette, McFadden, McCoy, and Dickhute terminations were necessary to "cut out the cancer" and "protect the children."

135.   Mayor Kennon and councilwoman Mitchell publicly gave false and   pretextual reasons for Plaintiffs' terminations which were calculated and intended to damage Plaintiffs' good names and reputations and to humiliate them.

136.   OBA has never received complaints related to any of the Plaintiffs from students and/or parents who taught their classes or attended EE Programs under their supervision.

137.   The false and derogatory comments and actions by Defendants OBA, Langston, Kennon and Mitchell created significant risk to Plaintiffs, including but not limited to, risk of harm to the reputation and concomitant harm to future employment prospects of Plaintiffs.

138.   Plaintiffs suffered adverse actions due to the Defendants' retaliatory actions, through its agents and employees, including Mayor Kennon, Mitchell, Langston and Mrs. Langston which caused Plaintiffs' harm.

139.   Defendant OBA  and its decision makers and administrators knew and/or should have known that their actions described herein were discriminatory.

140.   Defendants undertook its unlawful conduct recklessly and with total disregard of

22

Plaintiffs' federally protected rights.

141.   Milly's termination was directly related to her association and support of Morrisette, a gay man, as well as her complaints of discrimination asserted on Morrisette's behalf.

142.   Mayor Kennon, Councilwoman Mitchell, Langston and Mrs. Langston acted intentionally and maliciously with respect to Plaintiffs.

143.   Defendants failed to make good faith efforts to comply with federal law, and reasonable officials would have known that their actions violated clearly established law.

144.   As the direct and proximate result of the wrongful actions of Defendants, Plaintiffs were caused to suffer mental anguish, loss of dignity, embarrassment, humiliation, and other tangible and intangible injuries and indignities.

145.   Plaintiffs were caused to suffer loss of income and other benefits as a direct and proximate result of Defendants' discrimination and retaliation against them.

146.   Plaintiffs have been forced to obtain legal services of the undersigned attorney to enforce their rights under the law and are required to pay reasonable attorneys' fees, costs and expenses for the services rendered in this cause.

**D.     FACTS RELATED TO LACY IGNACIO MCFADDEN**

147.   McFadden started working with OBA as a volunteer and was hired part-time in August, 2020, as a choreographer with the EE Program. McFadden was also appointed to serve as a Steering Committee member and assigned to teach dance several times a week at the OBA Continuing Excellence Program.

148.   At all times relevant, McFadden was qualified to perform the assigned duties of her position.

23

149.   At all times relevant to this complaint, McFadden satisfactorily performed her duties.

150.   McFadden worked closely with Morrisette, Director of Theater, and developed a personal and professional relationship with Morrisette.

151.   At the time of McFadden's hiring, Langston informed McFadden he was a "man of God" and had been "called by God" to work at OBA and to lead. Langston also informed McFadden that he "liked to drink" and liked the word "f--k." McFadden found Langston's comments to be inappropriate and offensive.

152.   OBA was on notice and received numerous complaints regarding the inappropriate and discriminatory conduct of Langston and his wife, Mrs. Langston, including, but not limited to, complaints from Mathes, Davis, and Milly.

153.   OBA and its employees and representatives failed and/or refused to investigate complaints of discrimination asserted against Langston and/or to take corrective action to stop the discrimination.

154.   The policies, procedures, and practices utilized by OBA for reporting complaints of discrimination by employees was ineffective.

155.   On numerous occasions McFadden observed Langston, Recreation Director, harass Morrisette, Director of Theater, using derogatory and homophobic language including, but not limited to, "gay", "faggot", "queer", and "homo." The conduct of Langston was offensive and created an environment that was hostile and discriminatory.

156.   Mrs. Langston, McFadden's direct supervisor, made numerous inappropriate comments to McFadden and in her presence including, but not limited to, comments that Butler, who worked with the EE Program as a liaison for the Baldwin County Board of Education, had a "crush"

24

on Morrisette. Similar derogatory and offensive comments were made by Mrs. Langston about the music instructors, Chris Jenkins and Caleb Pittman.

157.    Mrs. Langston often vocalized her religious beliefs and the fact that homosexuals were not "family friendly."

158.    In August, 2020, the Steering Committee met and discussed show selections for the upcoming season. The Broadway play "Clue" was discussed as a possible production, but Mrs. Langston and Langston expressed concerns because a "gay" character was cast in the play. A few weeks later, Mrs. Langston revisited "Clue" options and expressed her desire to replace the homosexual with a "psychopath" and/or a "criminal". Mrs. Langston keep insisting that OBA "wasn't ready" to see a "gay character". Councilwoman Mitchell was, also, very vocal about the "gay" character during the Steering Committee meeting, noting a gay character "needed to go."

159.    McFadden was appalled and offended by the comments of Mitchell, Langston, and Mrs. Langston, voicing to the entire Steering Committee, including, but not limited to, Mitchell, Langston, and Mrs. Langston, that such comments were offensive and discriminatory. McFadden, also, vocalized that cutting out a "gay" character because "something must be wrong with him" because of his sexual orientation was highly offensive to Morrisette, an openly gay male. When the comments by Mitchell, Langston, and Mrs. Langston continued, McFadden walked out of the meeting in protest.

160.    "Clue" was rejected by Langston, Mrs. Langston, and Mitchell because the gay character could not be re-characterized and/or modified.

161.    McFadden engaged in protected activity when she openly opposed the hostility and discrimination of Morrisette in the Steering Committee meeting.

162.    In October, 2020, Mrs. Langston and Langston openly made derogatory comments to McFadden about Butler,   opining he was "gay" and that Butler "had a crush" on Morrisette. McFadden reasonably believed the comments to be inappropriate and offensive.

163.    In October, 2020, the Steering Committee recommended  "Hair Spray" as a possible production for the EE Program. Langston and Mitchell voiced  concerns due to racial aspects of the play as well as the fact that one of the female characters in "Hair Spray" was traditionally played by a male. Langston and Mitchell rejected "Hair Spray" because of racial and LGBTQ associations.

164.    Mitchell, who was a participant of the EE Program and Steering Committee, was aware of the hostile and discriminatory conduct and treatment of Morrisette and of Langston's crude and offensive manner towards Morrisette and others..

165.    In December, 2020, Mathes, a female Recreation Staff Member,  openly voiced concerns of sexual harassment and a hostile work environment against Langston with the Human Resource Department of OBA. Mathes asserted Langston had engaged in hostile and offensive conduct including, but not limited to, referring to her as a "hoe" and stating she needed to get the "sand out of her cooch".  Mathes was subsequently moved to another Department.

166.    In December, 2020, the Steering Committee met to discuss possible plays for the following season. "Hair Spray" was, again, entertained as a potential production for the EE Program. The play was initially given the green light and supported by the whole Steering Committee, parents, students, and the adult theater group members.  However, Mitchell, council member and a Steering Committee member, and Mrs. Langston, Creative Director, later rejected "Hair Spray" because of LGBTQ and "racial" content which was not "family friendly" or "appropriate."

167.    Members of the Steering Committee raised concerns about Mitchell and Langston's

rejection of "Hair Spray" noting the play had a strong message of diversity and inclusion. McFadden pointed out the show could provide an opportunity for OBA to address diversity and inclusion within OBA.  Mrs. Langston and Langston exclaimed their disinterest in diversity stating "the people of OBA are not ready" for diversity and inclusion.

168.   Mrs. Langston verbally accused Morrisette of "pushing" "Hair Spray" to further his "gay political agenda."   Morrisette was not the only person on the Steering Committee advocating for the selection of "Hair Spray."

169.   Morrisette, who was openly gay, was the only person called out and ostracized for his support of "Hair Spray." Morrisette was singled out because of his gender, male, his sexual orientation, and Langston, Mitchell, and Mrs. Langston's perceptions that Morrisette failed to conform to typical male norms and stereotypes.

170.   In December, 2020, Langston, Mitchell and Mrs. Langston advised the Steering Committee that it would not entertain any play containing homosexual and/or interracial content.

171.   The derogatory and discriminatory language of Langston and Mrs. Langston directed at Morrisette was frequent and pervasive and resulted in a hostile work environment.  Morrisette was often criticized for his perceived lack of masculinity and his sexual orientation and lifestyle were frequently condemned.

172.   Members of the EE Program and Steering Committee, including, but not limited to, McFadden and Milly, openly objected to the discriminatory, hostile, offensive, and adverse treatment of Morrisette by Mrs. Langston and Langston. Their objections were not addressed in any manner and the discriminatory and hostile conduct by Langston and Mrs. Langston continued unabated.

173.   Defendant OBA and its administrators and managers failed to take complaints of

27

discrimination seriously and/or to provide Plaintiffs an effective remedy to the offensive conduct.

174.    OBA was on notice and had knowledge of the discriminatory conduct of Langston and Mrs. Langston.

175.    McFadden engaged in protected activity when she openly voiced her objections and opposition to the discrimination during several meetings at OBA.

176.    In January, 2021, the EE Theater program put on the production of " Beauty and the Beast."  The production was a huge success,   receiving the acclaim and accolades of Mayor Kennon, the City Council, and the community at large.

177.    After the production of "Beauty and the Beast,"  there was a meeting to discuss the logistics of the production and changes to be implemented for the next show. Mrs. Langston made homophobic and biased comments regarding Chris Jenkins and Caleb Pittman and indicated they should be "fired."

178.    January 5, 2021, Mayor Kennon advised McFadden that he "loved the choreography" of "Beauty and the Beast".  Mayor Kennon advised McFadden he would provide her "anything [she] need[s]" for future productions.

179.    January 5, 2021, Langston and Ms. Langston approached McFadden about  Milly's future employment as a full-time employee.

180.    In January, 2021, "Hair Spray" discussions resurfaced in the Steering Committee. Mrs. Langston, once again, singled out  Morrisette accusing him of a "political agenda" and "pushing the gay agenda."  Mrs. Langston, again, voiced objections to the play due to a female character that was required to be cast by a man. The following day, Mrs. Langston informed the Steering Committee that the EE Program was a "community theater" and it would not entertain a "political agenda." Mrs.

Langston told the Committee that all future productions would be "family friendly."

181.    In January, 2021, Langston called  Chris Jenkins'  audition "faggoty". These comments were later repeated by Mrs. Langston.

182.    McFadden found the comments and conduct of Mrs. Langston, Langston and Mitchell to be offensive and discriminatory.

183.    February 15, 2021, McFadden was contacted by Langston, Pishna, Human Resource Director, and Polly Pittman and "let go."   McFadden was advised her termination was because there "would be no theater program" and it was being "disbanded."

184.    Langston informed McFadden her  termination was unrelated to her performance and she was directed to call Langston in a few weeks to discuss McFadden's  future involvement with the theater program.

185.    Upon information and belief, Pishna, Human Resource Director for OBA, was informed and placed on notice that the terminations of McFadden and other employees were discriminatory.

186.    OBA failed and/or refused to investigate and/or review complaints of discrimination asserted as a result of the terminations of McFadden, Milly, Morrisette, Dickhute, and McCoy by OBA and/or its employees, board members and/or representatives.

187.    Three (3) hours after McFadden, Morrisette, Milly, Dickhute, and McCoy were terminated, the EE Program sent out an email to the cast of "Footloose," notifying them that scheduled rehearsals would be delayed due to licensing issues.   The representations by Defendants were false.

188.    Hours after notice of McFadden's and the other employees' terminations had been

posted, Mrs. Langston, Langston, and Mayor Kennon advised students, parents and the community at large that the EE  Program was not being dissolved and/or disbanded and was expected to continue its theater productions in the immediate future.

189.    Mrs. Langston advised parents that the terminations of McFadden, Milly, Morrisette, Dickhute, and McCoy were because of the "kind of people that are around your children."  Mrs. Langston, Langston, Mayor Kennon, and  City Council member Mitchell also advised students, parents and the community at large that the terminations were necessary for the "safety of the children."

190.    Mayor Kennon published to parents and the community at large that the terminations were implemented to "cut out the cancer" and "protect the children."

191.    Langston, Kennon and Mitchell publicly gave false and pretextual reasons for Plaintiffs' terminations which were calculated and intended to damage Plaintiffs' good names and reputations and to humiliate them.

192.    The false and derogatory comments and actions by Defendants OBA, Kennon and Mitchell created significant risk to Plaintiffs including but not limited to, risk of harm to their reputations and concomitant harm to future employment prospects.

193.    Plaintiffs suffered adverse actions due to the Defendants'  retaliatory actions, through its agents and employees, including Mayor Kennon, Mitchell, Langston and Mrs. Langston which caused Plaintiffs' harm.

194.    Defendant  OBA and its decision makers and administrators knew and/or should have known that their actions described herein were discriminatory.

195.    Defendants undertook their unlawful conduct recklessly and with total disregard to

Plaintiffs' federally protected rights.

196.    Within one week of the terminations of McFadden, Milly, Dickhute and Morrisette, all positions held by them had been posted and filled by OBA.

197.    McFadden was replaced by Olivia Vaughan, one of McFadden's choreography students.

198.    McFadden's employment was terminated as a direct result of her association and support of Morrisette, an openly gay man, as well as her opposition and complaints of discrimination asserted on Morrisette's behalf.

199.    Mayor Kennon, Councilwoman Mitchell, Langston and Mrs. Langston acted intentionally and maliciously with respect to Plaintiffs.

200.    Defendants failed to make good faith efforts to comply with the law, and a reasonable official would have known that their actions violated clearly established law.

201.    As a direct and proximate result of the wrongful actions of Defendants, Plaintiffs were caused to suffer mental anguish, loss of dignity, embarrassment, humiliation, and other tangible and intangible injuries and indignities.

202.    Plaintiffs were caused to suffer loss of income and other benefits as a direct and proximate result of Defendants' discrimination and retaliation against them.

203.    Plaintiffs have been forced to obtain legal services of the undersigned attorney to enforce their rights under federal law and are required to pay reasonable attorneys' fees, costs and expenses for the services rendered in this cause.

## CAUSES OF ACTION

### COUNT I
### HOSTILE WORK ENVIRONMENT
### Title VII and 42 U.S.C. Section 1983
**(Morrisette's claim against OBA, City Council and Mitchell, Kennon, and Langston, in their official and individual capacities)**

204.    Morrisette reavers and realleges the foregoing paragraphs as though fully set out herein.

205.    Morrisette was subjected to a hostile, offensive, and abusive working environment by his supervisors, Langston and Mrs. Langston, as a direct result of gender, male, sexual orientation, and his failure to conform to male norms and stereotypes.

206.    Langston's conduct was done with reckless indifference to the Plaintiff's federally protected rights, and Defendants failed to make good faith efforts to comply with the law.

207.    OBA's harassment policies failed to properly inform employees and/or to provide an effective reporting mechanism to Plaintiffs.

208.    The harassment against Morrisette was pervasive, and Defendants OBA, City Council, Kennon and Mitchell knew or should have known of the hostile work environment.

209.    Mitchell, who was a member of the Steering Committee, observed, participated and had notice and knowledge of the hostile and discriminatory conduct of Langston and Mrs. Langston.

210.    Morrisette found the harassment to be humiliating, offensive, unfair and in violation of his federally protected rights.

211.    The conduct alleged herein created an intolerable condition and work environment under which Plaintiff worked or attempted to work.

212.     Defendants knew or should have known of the discrimination by Langston and had received prior complaints from other employees including complaints from Milly, Mathes, and Davis.

213.     Defendants OBA, Kennon and Mitchell received reports from Plaintiffs regarding the discrimination of Morrisette and failed to take prompt, effective, remedial action upon notice of the same.

214.     Defendants knew or should have known that Langston and Mrs. Langston's conduct violated clearly established federal law.

215.     The Defendants' conduct was done with reckless indifference to the Plaintiff's federally protected rights and Defendant failed to make good faith efforts to comply with the law.

216.     Defendant OBA, City Council, Kennon and Mitchell ratified the hostile and offensive acts of Langston and the hostile environment.

217.     Plaintiff suffered frustration, anxiety, humiliation and emotional distress and other compensatory damages as a result of the harassment.

218.     Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and is required to reasonable attorneys' fees, costs and expenses for the services rendered in this cause.

<u>**COUNT II**</u>
<u>**GENDER DISCRIMINATION**</u>
<u>**Title VII and 42 U.S.C. Section 1983**</u>
**(Morrisette's claims against OBA, City Council, Kennon, in his official capacity only, Mitchell, in her individual and official capacity as a City Council member, and Langston, in his official and individual capacities)**

219.     Plaintiff avers and incorporates herein by reference the foregoing paragraphs as if fully

set forth herein.

220.    Plaintiff Morrisette was treated differently than other employees or applicants based upon his sex, male, and because Morrisette, an openly gay male, was in a same-sex marriage and associated with someone of the same sex.

221.    Plaintiff Morrisette was terminated because of his sex, male, sexual orientation, and his failure to conform to male norms and stereotypes.

222.    Defendants had no legitimate non-discriminatory reason for Morrisette's termination.

223.    Defendants knew or should have known of the discrimination of Morrisette by Langston and had received prior complaints from other employees, including complaints from Milly, McFadden, Mathes, and Davis.

224.    Defendants OBA, Kennon and Mitchell received reports from Milly and McFadden regarding the discrimination of Morrisette and failed to take prompt, effective, remedial action upon notice of the same.

225.    Mitchell and Kennon were aware of and participated in the discriminatory conduct and termination of Morrisette and/or ratified the the conduct of Langston.

226.    Defendants knew or should have known that their conduct violated clearly established federal law.

227.    As a direct and proximate result of the wrongful actions of Defendants, Plaintiff Morrisette was caused to suffer mental anguish, loss of dignity, embarrassment, humiliation, and other intangible injuries and other directly and indirectly related expenses.

228.    Defendants' actions were done maliciously and/or done with reckless indifference to the Plaintiff's federally protected rights.

229.    Mayor Kennon, Councilwoman Mitchell, Langston and Mrs. Langston acted intentionally and maliciously with respect to Plaintiffs, entitling Plaintiffs to recover punitive damages against them.

230.    As the direct and proximate result of Defendants' wrongful actions, Morrisette was caused to suffer lost wages, loss of future earning capacity, loss of raises, mental anguish, loss of dignity, embarrassment, humiliation, and other tangible and intangible injuries and other directly and indirectly related expenses.  These losses are continuing and the Plaintiff will continue to suffer such losses in the future.

231.    Reasonable public officials knew or should have known that Defendants' actions violated clearly established law.

232.    OBA, City Council, Kennon and Mitchell knew or should have known of the unlawful conduct of Langston and Mrs. Langston and failed and/or refused to take appropriate action to stop the discriminatory conduct.

233.    OBA, City Council, Kennon and Mitchell ratified the conduct of Langston and/or Kennon.

234.    As the direct and proximate result of Defendants' wrongful actions, Morrisette was caused to suffer lost wages, loss of future earning capacity, loss of raises, mental anguish, loss of dignity, embarrassment, humiliation, and other tangible and intangible injuries and other directly and indirectly related expenses.  These losses are continuing and the Plaintiff will continue to suffer such losses in the future.

235.    Defendants acted willfully, intentionally and with callous or reckless indifference to Morrisette's federally protected rights,  and Defendants failed to make good faith efforts to comply

35

with the law.

236. Reasonable  public officials should have known that Defendants' actions violated clearly established law.

237. Plaintiff  has  been  forced to obtain legal services of the undersigned attorney to enforce their rights under Title VII and is required to pay  reasonable attorneys' fees, costs and expenses for the services rendered in this cause.

**COUNT III**
**TITLE VII and 42 U.S.C. Section 1983**
**ASSOCIATIONAL DISCRIMINATION CLAIM**
**(Milly and McFadden's Claims Against OBA, City Council, and Mitchell, Kennon**
**and  Langston in their individual and official capacities)**

238. Plaintiffs reaver and  realleges the foregoing paragraphs as though fully set out herein.

239. Plaintiffs Milly and McFadden, both heterosexual females, engaged in a personal and working relationship with Morrisette, a gay male.

240. Plaintiffs Milly and McFadden were exposed and required to tolerate the hostile and discriminatory work environment of Morrisette, a gay male, by Langston, Mrs. Langston, and Mitchell.

241. Plaintiffs Milly and  McFadden, both heterosexual females,  voiced objections and opposition to  the hostile and discriminatory treatment of  Morrisette.

242. Plaintiffs Milly and McFadden were terminated and retaliated against as a direct result of their relationship, association, and vowed support of Morrisette, a gay male.

243. Defendants denied Plaintiffs Milly and  McFadden their  freedom of speech and/or association guaranteed by the First Amendment to the U.S. Constitution.

244. The adverse actions taken by Defendants against Plaintiffs reasonably deterred Plaintiffs and  other  employees from exercising their  First Amendment rights  and  from engaging in protected

conduct.

245.    As the direct and proximate result of Defendants' wrongful actions, Plaintiffs Milly and McFadden were was caused to suffer lost wages, loss of future earning capacity, loss of raises, mental anguish, loss of dignity, embarrassment, humiliation, and other tangible and intangible injuries and other directly and indirectly related expenses.    These losses are continuing and the Plaintiffs will continue to suffer such losses in the future.

246.    Defendants acted willfully, intentionally and with callous or reckless indifference to Plaintiffs' federally protected rights and Defendants failed to make good faith efforts to comply with the law.

247.    Reasonable public officials knew or should have known that Defendants' actions violated clearly established law.

248.    OBA, City Council, Kennon and Mitchell knew or should have known of the unlawful conduct of Langston and Mrs. Langston and failed and/or refused to take appropriate action to stop the discriminatory conduct.

249.    OBA, City Council, and Mitchell ratified the conduct of Langston and/or Kennon.

250.    Plaintiffs have been forced to obtain legal services of the undersigned attorney to enforce their rights under Title VII and are required to pay reasonable attorneys' fees, costs and expenses for the services rendered in this cause.

## COUNT IV
## TITLE VII and 42 U.S.C. Section 1983
### (Retaliation)
**(Plaintiffs claims against Defendants OBA, City Council, and Kennon, Langston, and Mitchell in their individual and official capacities)**

251.    Plaintiffs aver and incorporate herein each of the foregoing paragraphs as if fully set

forth herein.

252.  Morrisette, Milly and McFadden engaged in protected activity when they openly opposed and asserted complaints of discrimination against Langston and Mrs. Langston, their direct supervisors, for their harassment and discrimination against Morrisette.

253.  Plaintiffs' actions and conduct in reporting discrimination in the workplace was a matter of public concern.

254.  Plaintiffs opposed employment practices they reasonably believed to be discriminatory and in violation of federal law.

255.  OBA, Kennon, Mitchell and the City Council failed and/or refused to investigate Plaintiffs' complaints and/or to take any corrective action to prevent the harassment and retaliation against Plaintiffs.

256.  After Plaintiffs opposed discrimination and attempted to initiate formal complaints of discrimination, Defendants and/or their agents, employees, representatives, and administrators terminated Plaintiffs.

257.  Plaintiffs' opposition to discriminatory conduct was a substantially motivating factor and cause of the termination and adverse actions taken against Plaintiffs.

258.  Plaintiff's' opposition to discrimination and exercise of their rights to free speech regarding concerns of racial discrimination in the workplace was a significant motivating factor in Defendants' decision to terminate Plaintiffs.

259.  The stated reasons for Plaintiffs' termination were false and pretextual for discrimination.

260.  Defendants retaliated against Plaintiffs in violation of federal law for their exercise

of federally protected rights which are prohibited and discriminatory.

261.    Defendants denied Plaintiff their freedom of speech and/or association guaranteed by the First Amendment to the U.S. Constitution.

262.    Defendants Kennon, Mitchell and Langston knew or were recklessly indifferent to the fact that their conduct violated established federal law.

263.    Plaintiffs suffered adverse actions due to the Defendants retaliatory actions, through its agents and employees Mayor Kennon, Mitchell, Langston and Mrs. Langston which caused them harm.

264.    Plaintiffs' opposition or participation in these matters was a motivating factor in Defendants' termination of Plaintiffs in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-3(a).

265.    Defendants' actions were done maliciously and/or done with reckless indifference to the Plaintiff's federally protected rights.

266.    As the direct and proximate result of Defendants' wrongful actions, Morrisette, Milly and McFadden were caused to suffer lost wages, loss of future earning capacity, loss of raises, mental anguish, loss of dignity, embarrassment, humiliation, and other tangible and intangible injuries and other directly and indirectly related expenses.  These losses are continuing and the Plaintiffs will continue to suffer such losses in the future.

267.    Defendants acted willfully, intentionally and with callous or reckless indifference to Plaintiffs' federally protected rights,  and Defendants failed to make good faith efforts to comply with the law.

268.    Reasonable public officials knew or should have known that Defendants'  actions

39

violated clearly established law.

269.    OBA, City Council, Kennon and Mitchell knew or should have known of the unlawful conduct of Langston and Mrs. Langston and failed and/or refused to take appropriate action to stop the discriminatory conduct.

270.    OBA, City Council, Kennon and Mitchell participate and/or ratified the conduct of Langston.

271.    Plaintiffs have been forced to obtain legal services of the undersigned attorney to enforce their rights under Title VII and are required to pay reasonable attorneys' fees, costs and expenses for the services rendered in this cause.

## COUNT V
## 42 USC SECTION 1983
## EQUAL PROTECTION CLAIM
**(OBA and Kennon, Langston, and Mitchell in their individual and official capacities)**

272.    Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

273.    Defendants subjected Plaintiffs to different terms and conditions of employment in violation of the Equal Protection Clause as enforced through 42 U.S.C. Section 1983.

274.    In their actions towards Plaintiffs as described above, Langston, Kennon, and Mitchell acted willfully, intentionally and/or with callous and/or reckless indifference to Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment  to the United States Constitution.

275.    Reasonable public officials knew or should have known that their actions violated clearly established law.

276.    As a direct result of the Defendants' treatment and actions, Plaintiffs have lost

income and benefits, suffered emotional distress and other compensatory losses.

277.    The Defendants' conduct was done with reckless indifference to the Plaintiffs' federally protected rights and Defendants failed to make good faith efforts to comply with the law.

278.    Plaintiffs suffered frustration, anxiety, humiliation and emotional distress as a result of the harassment.

279.    Plaintiffs have been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and are required to pay reasonable attorneys' fees, costs and expenses for the services rendered in this cause.

### COUNT VI
### §1983 FOURTEENTH AMENDMENT
### FAILURE TO SUPERVISE AND TRAIN
### (OBA, City Council and Kennon and Mitchell in their Individual and Official Capacities)

280.    Plaintiffs reaver and reallege the foregoing paragraphs as if fully set forth herein.

281.    Defendant Kennon was charged with the management and operation of OBA including employees assigned to work at the city.

282.    Defendants OBA, City Council, Kennon, and Mitchell were responsible for implementing and enforcing EEO policies of the company including, but not limited to, policies related to discrimination in the workplace.

283.    Defendants OBA, City Council, Mitchell, and Kennon had an affirmative duty to train employees, including appropriate training for managerial employees, regarding EEO policies to prevent discrimination and retaliation in the workplace.

284.    Defendants OBA, City Council, Mitchell, and Kennon, as Mayor, had an affirmative duty to investigate complaints of discrimination and take corrective action to prevent discriminatory conduct in the workplace in accordance with OBA policies and federal and state

41

laws.

285.    Defendants failed and/or refused to provide adequate training and supervision to its agents, staff, and servants, including Langston and Kennon, in the lawful execution of their duties, and this failure to train and supervise became the unconstitutional policy of OBA.

286.    Defendants OBA, City Council, Mitchell and Kennon knew and/or should have known of the importance in obtaining and providing training and supervision to its employees and managers and of the risk associated with its failure to provide it employees and managers with such training.

287.    The Defendants' conduct was done with reckless indifference to the Plaintiffs' federally protected rights, and Defendants failed to make good faith efforts to comply with state and federal law.

288.    Defendants OBA, City Council, Mitchell, and Kennon's failure to properly train and supervise amounted to a deliberate indifference to the Constitutional rights of the Plaintiffs.

289.    Defendants acted willfully, intentionally, and/or with callous or reckless indifference to Plaintiffs' rights guaranteed her under the law.

290.    Reasonable public officials knew or should have known that their actions violated clearly established law.

291.    Plaintiffs suffered frustration, anxiety, humiliation and emotional distress as a result of the harassment and retaliation.

292.    Plaintiffs have suffered loss of income and benefits, loss of future earnings, and suffered emotional distress as a direct result of Defendants' actions.

293.    Plaintiffs have been forced to obtain legal services of the undersigned attorneys to

enforce her rights and is required to pay reasonable attorneys' fees, costs and expenses for the services rendered in this cause.

**COUNT VII**
**42 USC §1983 - FOURTEENTH AMENDMENT**
**VIOLATIONS OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS**
**(OBA, City Council and Kennon and Mitchell in their Individual and Official**
**Capacities)**

294.    Plaintiffs reaver and reallege the foregoing paragraphs as though fully set forth herein.

295.    Kennon, Mitchell and Langston advised students, parents, and the OBA community at large that Plaintiffs were terminated to "protect the children" and for the "safety of the children," creating inferences of Plaintiffs' wrongdoing.

296.    The statements and actions of Defendants Kennon, Mitchell, Langston and Mrs. Langston placed Defendants' good  names  and character in jeopardy and compromised and jeopardized their future earnings and employment.

297.    Plaintiffs allege Defendants infringed upon Plaintiffs' Fourteenth Amendment Rights by terminating their employment with OBA for discriminatory purposes.

298.    Plaintiffs further allege that the policies, customs, and practices of OBA are unconstitutional.

299.    Plaintiffs allege that Defendants infringed upon their Fourteenth Amendment Rights by terminating their employment, and most important, taking away their good  names and character without due process of law.

300.    Defendants deprived Plaintiffs of their substantive due process rights with malice and intent to harm.

301.    The actions of the Defendants Mitchell, Langston, and Kennon were motivated by a desire to curtail or to penalize Plaintiffs for their exercise of constitutionally protected rights which violates Plaintiffs' substantive due process rights.

302.    The customs, practices and policies of Defendants regarding homosexuals and discrimination violates the fundamental rights of Plaintiffs and those similarly situated employees and is unconstitutional.

303.    Defendants' acts constituted a violation of 42 U.S.C. § 1983.

304.    Plaintiffs' substantive due process rights under the Fourteenth Amendment were violated in that they were retaliated against for exercising their federally protected rights and were terminated by Defendants.

305.    Plaintiffs  had liberty interests of privacy and reputation which were  damaged as a direct result of Defendants'  Kennon, Mitchell, and Langston's malicious and false comments to students, parents, and the public at large.

306.    The actions of Langston, Mitchell and Kennon against Plaintiffs was willful, intentional and/or with callous and/or reckless indifference to Plaintiffs' rights under the law.

307.    Reasonable public officials knew or should have known that their actions violated clearly established law.

308.    As a direct result of the Defendants' treatment and actions, Plaintiffs have lost income and benefits, future wages and income, have suffered emotional distress and have had their reputations damaged and/or compromised.

309.    Plaintiffs have been forced to obtain legal services of the undersigned attorney  to enforce their rights under Title VII and is required to pay reasonable attorneys' fees, costs and

expenses for the services rendered in this cause.

## COUNT VIII
## INVASION OF PRIVACY
### State Law and 42 U.S.C. Section 1983
### (OBA, City Council, Kennon, in his official capacity, Mitchell, in her official capacity, and Langston in his individual and official capacities)

310.    Plaintiffs reallege and adopts all allegations contained in the foeaging paragraphs as if fully set out herein.

311.    Defendant Langston, and his wife, Mrs. Langston, secretly recorded and published Plaintiffs' private conversations of which Langston and Mrs. Langston were not participants and Plaintiffs were recorded without their notice or knowledge in violation of state law.

312.    Langston's publication was not for business purposes but, instead, was retaliatory and  unreasonable.

313.    The unlawful acts of Defendant Langston and his wife, Mrs. Langston, in secretly recording and publishing private conversations of Plaintiffs was an unreasonable invasion of Plaintiffs personal sanctity and privacy.

314.    The actions of Langston described above constituted an invasion upon the Plaintiffs' physical solitude and/or seclusion and did so in violation of ordinary decency, imposing emotional distress upon Plaintiffs.

315.    As a proximate consequence thereof, the Plaintiffs were caused to suffer damages as enumerated herein.

316.    Defendants OBA, City Council, Kennon and Mitchell, by and through their agents, employees, officials and supervisors knew or should have known of the harmful and offensive propensities of Langston.

317.   Defendants OBA, City Council, Mitchell and Kennon assumed responsibility for Langston and Mrs. Langston's conduct and ratified their wrongful conduct towards the Plaintiffs.

318.   In Langston and Mrs. Langston's actions towards Plaintiffs as described above, Defendant Langston and his wife acted willfully, intentionally, and/or with callous or reckless indifference to Plaintiffs' protected rights.

319.   Defendants OBA, City Council, Kennon, and Mitchell ratified the unlawful actions of Langston.

320.   As a result of Defendants' adverse acts against Plaintiffs, and in retaliation for their exercise of his rights under federal law, Plaintiffs were caused to suffer compensatory and punitive damages, loss of employment, and harm to their reputation and future employment opportunities.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs respectfully request the following relief:

a.   Acceptance of jurisdiction of this Complaint;

b.   The entry of a declaratory judgment that the Defendants' employment practices alleged herein are illegal and in violation federal law.

c.   The entry of a permanent injunction against the Defendants, and its administrators, officers, board members, agents, successors, employees, representatives, and any and all persons acting in concert with it, from engaging in any further unlawful practices, policies, customs, usages, and procedures based on gender discrimination, as set forth herein;

d.   The entry of an Order requiring Defendants to eliminate the continuing effects of its discriminatory policies, practices, and procedures described herein;

e.   The entry of an Order placing or restoring Plaintiffs into those jobs they

46

would now be occupying but for the Defendants' discriminatory practices and/or front pay;

f.   Award compensatory damages in an amount the jury determines will compensate the Plaintiffs for their losses and damages suffered and/or nominal damages as may be appropriate.

g.   Award punitive damages against Defendants Kennon, Mitchell and Langston for their deliberate and intentional acts against Plaintiffs.

h.   The entry of an award of litigation costs and expenses, including reasonable attorneys' fees, costs and expenses to the Plaintiffs;

i.   Retain jurisdiction of this action following judgment for sufficient time to insure that Defendants comply with the law and decree which may be entered herein, and during such time to require Defendant to report such information as is necessary to evaluate their compliance.

j.   Grant Plaintiffs such other and further relief as equity and justice requires.

Respectfully submitted this 22nd  day of December, 2022.

## JURY DEMAND

Plaintiff herein demands trial by jury of all issues in this action.

Respectfully submitted this 22nd  day of December, 2022.

Stein and Pilcher, L.L.C.
151 N. Bancroft Ave.
Post Office Box 602
Fairhope, Alabama 36533
Telephone: (251) 210-4557
Facsimile: (251) 259-5684

/s/ Mary E. Pilcher
Mary E. Pilcher (PILCM2436)